UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANN M. PALMER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 08 C 6158 |
| ) | Magistrate Judge Geraldine Soat Brown |
| SOUTHWEST AIRLINES CO., ) | |
| a Texas corporation, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Ann M. Palmer ("Palmer") filed an amended complaint against defendant Southwest Airlines Co. ("Southwest") alleging sex discrimination and retaliation. (Am. Compl. ¶¶ 19, 20, 27.) [Dkt 36.] The parties have consented to the jurisdiction of a Magistrate Judge. [Dkt 15, 16.] Southwest has moved to dismiss Palmer's claims pursuant to Fed. R. Civ. P. 12(b)(6) on the ground that Palmer's Equal Employment Opportunity Commission ("EEOC") charge was untimely and therefore she did not satisfy the administrative requirements for bringing a Title VII lawsuit. [Dkt 37, 38.] For the reasons set out below, Southwest's motion is denied.

# FACTUAL BACKGROUND[1]

### A. Palmer's employment with Southwest

Palmer was hired by Southwest in February 2002 to work as a flight attendant. (Am. Compl. ¶ 7.) On March 13, 2007, Southwest discharged Palmer, along with her male coworker Ron Gibson, because of alleged misconduct toward members of the public while they were staying at a hotel in Las Vegas. (*Id*. ¶ 10, Ex. A at ANK 19.) Palmer and Gibson both filed grievances challenging their terminations pursuant to the applicable collective bargaining agreement. (*Id*. ¶ 11.) In August 2007, separate arbitrations of Palmer's and Gibson's grievances were held. (*Id*. ¶ 12.) On October 2, 2007, prior to the issuance of the arbitrator's rulings on either of the grievances, Southwest reinstated Gibson to his position as a flight attendant. (*Id*. ¶ 13, Ex. A at ANK 19.) Southwest did not reinstate Palmer. (*Id*. ¶ 14.) The arbitrator subsequently upheld Palmer's discharge. (*Id*. ¶ 17.)

### B. The intake questionnaire and attached statement

On November 5, 2007, Palmer completed and submitted an EEOC form "intake questionnaire" in which she set forth her belief that she had been subject to sex discrimination and retaliation. (*Id*. ¶¶ 4b, d, Ex. A.) On the form, Palmer noted that her claims were based on her discharge in March 2007 and her failure to be reinstated in October 2007. (*Id.* Ex. A at ANK 19.) Also on the form, Palmer provided information including her name, address, and telephone number as well as that of her employer, her dates of employment, the number of employees at Southwest, the name of the person whom she believed discriminated against her, the names of comparable

---

[1] The following facts, taken from Palmer's amended complaint and attached exhibits, are assumed to be true for purposes of this opinion. *See Bontkowski v. First Natl. Bank of Cicero*, 998 F.2d 459, 461 (7th Cir. 1993).

employees, the names of three witnesses, and the fact that she had not filed a charge or complaint with any other agency. (*Id*. Ex. A at ANK 18-21.) She further checked a box marked "Yes," indicating that she had sought help regarding the situation from the Transport Workers Union, which was representing her through the grievance process. (*Id*. Ex. A at ANK 21.)

Printed at the bottom of the last page of the questionnaire were, *inter alia*, the following statements:

> PRINCIPAL PURPOSE. The purpose of this questionnaire is to solicit information in an acceptable form consistent with statutory requirements *to enable the Commission to act on matters within its jurisdiction. When this form constitutes the only timely written statement of allegations of employment discrimination, the Commission will, consistent with 29 CFR 1601.12(b) and 29 CFR 1626.8(b), consider it to be a sufficient charge of discrimination under the relevant statute(s)*.
>
> ROUTINE USES. Information provided on this form will be used by Commission employees to determine the existence of facts relevant to a decision as to whether the Commission has jurisdiction over allegations of employment discrimination and to provide such charge filing counseling as is appropriate. Information provided on this form may be disclosed to other State, local and federal agencies as may be appropriate or necessary to carrying out the Commission's functions. Information may also be disclosed to respondents in connection with litigation.
>
> WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND EFFECT ON INDIVIDUAL FOR NOT PROVIDING INFORMATION. The providing of this information is voluntary but the failure to do so may hamper the Commission's investigation of a charge of discrimination. It is not mandatory that this form be used to provide the requested information.

(*Id*. Ex. A at ANK 21, emphasis added.) Palmer signed her name at the bottom of the questionnaire, but did not verify it. (*Id*.)

Palmer attached a four page statement to the questionnaire, with details regarding the alleged sex discrimination and retaliation as well as the basis for her belief that she had been discriminated and retaliated against. (*Id*. ¶ 4b, Ex. B.) Palmer stated, for example, that Southwest's action of

"requiring [her] to wear a wig to perform [her] duties is discriminating because companies can't have different appearance standards for men and women." (*Id*. Ex. B at ANK 29.) She further noted that "Ron Gibson was offered his job back and [she] was not," and that she felt she had been "disciplined differently from other participants in this incident" because of her past appearance issues with Southwest. (*Id*. Ex. B at ANK 31, 32.) Palmer also asserted that she did "not believe that the offenses the Company has laid against [her] warranted termination." (*Id*. Ex. B at ANK 31.) Finally, Palmer noted that she was currently awaiting a decision from an arbitrator, and believed that "the transcripts from this [arbitration] hearing would provide [the EEOC] with the most information available about the incident." (*Id*. Ex. B at ANK 31, 32.) Palmer's attached statement was unsigned and unsworn. (*Id*. Ex. B.)

C.     **Subsequent events**

On December 31, 2007, the EEOC issued a Notice of Charge of Discrimination addressed to Southwest. (*Id*. ¶ 4h, Ex. C.) The Notice of Charge advised Southwest that Palmer had filed a charge of sex discrimination and retaliation and that the issues involved Palmer's discharge and terms and conditions of employment. (*Id*. Ex. C.)  The Notice of Charge was signed by an EEOC Representative. (*Id*. Ex. C.)

On April 4, 2008, approximately 388 days after her discharge, Palmer signed and filed a verified charge of discrimination with the EEOC. (*Id*. ¶ 4n, Exs. D, E.) In that charge, Palmer alleged that her discharge and failure to be reinstated were discriminatory and retaliatory. (*Id*. Exs. D, E.) The EEOC issued a Right to Sue notice on August 4, 2008. (*Id*. ¶ 5, Ex. F.)

On October 28, 2008, Palmer filed this lawsuit, amending her complaint on June 10, 2009.

[Dkt 1, 36.] In her lawsuit, Palmer claims that Southwest discriminated against her on the basis of her sex and retaliated against her by terminating her employment and failing to reinstate her while reinstating Mr. Gibson. (Am. Compl. ¶¶ 19, 20, 27.)

**LEGAL STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, ___ U.S. ___, 129 S. Ct. at 1950. A written instrument that is attached to a complaint is considered part of the complaint for purposes of a motion to dismiss. *Local 15, Intl. Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007) (citing, *inter alia*, Fed. R. Civ. P. 10(c), which provides that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes").

**DISCUSSION**

For cases arising in Illinois, an administrative charge of discrimination must be filed with the EEOC within 300 days of the alleged violation. 42 U.S.C. § 2000e-5(e)(1); *see also E.E.O.C. v. Harvey L. Walner & Assocs.,* 91 F.3d 963, 968 (7th Cir. 1996). The 300-day period begins to run on the date that the adverse employment decision was made and communicated to the plaintiff. *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir. 1990). The failure to "timely file the charge with the EEOC bars any subsequent civil rights suit . . . ." *Snider v. Belvidere Township*, 216 F.3d

616, 618 (7th Cir. 2000). *See also Salas v. Wis. Dept. of Corr.*, 493 F.3d 913, 921 (7th Cir. 2007) (noting that filing a timely charge is not a jurisdictional prerequisite to suit in federal court but is an affirmative defense akin to administrative exhaustion).

Southwest argues that Palmer's amended complaint should be dismissed with prejudice because Palmer's EEOC charge was untimely and therefore she did not satisfy the administrative requirements for bringing a Title VII lawsuit. (Def.'s Mem. at 1-2.) [Dkt 38.] Palmer acknowledges that the deadline by which she had to file her charge, based on her termination date of March 13, 2007, was approximately January 7, 2008, and that she signed and verified an EEOC "Charge of Discrimination" on April 4, 2008. (Pl.'s Resp. at 4.) [Dkt 41.] However, Palmer argues that the intake questionnaire and attached written statement she submitted on November 5, 2007, prior to the expiration of the 300-day limitations period, constitute a valid charge under the EEOC's regulations as recently interpreted by the Supreme Court in *Federal Express Corp. v. Holowecki*, ___U.S. ___, 128 S. Ct. 1147 (2008). (Pl.'s Resp. at 1, 6-12.) Thus, the issue is whether Palmer's intake questionnaire and attached statement submitted on November 5, 2007, taken together, constitute a sufficient "charge" under Title VII.[2]

A. **Information and verification requirements**

Title VII requires that "[c]harges shall be in writing under oath or affirmation and shall contain such information and be in such form as the [Equal Employment Opportunity] Commission requires." 42 U.S.C. § 2000e-5(b). The EEOC regulations state that every charge should contain the following

---

[2] Southwest also argues that the EEOC's Notice of Charge issued on December 31, 2007, does not itself constitute a charge. (Def.'s Mem. at 5.) Palmer does not dispute that point in her response and it is assumed that Palmer concedes that point.

information:

>   (1) The full name, address and telephone number of the person making the charge except as provided in § 1601.7;
>   (2) The full name and address of the person against whom the charge is made, if known (hereinafter referred to as the respondent);
>   (3) A clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices . . . ;
>   (4) If known, the approximate number of employees of the respondent employer or the approximate number of members of the respondent labor organization, as the case may be; and
>   (5) A statement disclosing whether proceedings involving the alleged unlawful employment practice have been commenced before a State or local agency charged with the enforcement of fair employment practice laws and, if so, the date of such commencement and the name of the agency.

29 C.F.R. § 1601.12(a). A filing that omits some of the above information may still qualify as a charge, however. "[A] charge is sufficient when the [EEOC] receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of." 29 C.F.R. § 1601.12(b).

At the oral argument on the present motion, Southwest's attorney agreed that Palmer's completed intake questionnaire and attached statement contained all of the information outlined in 29 C.F.R. § 1601.12(a). Specifically, Palmer included her name, address and telephone number as well as that of her employer (the entity against whom the charge was made), a statement of the facts, including pertinent dates, which constituted the alleged unlawful employment practices, the approximate number of employees of the employer, and a statement disclosing that she had not filed a complaint with another agency. (*See* Am. Compl. Exs. A, B.) Thus, she provided the information required to be included in a charge.

Like Title VII, the EEOC's regulations also require that a charge "shall be in writing and signed and shall be verified." 29 C.F.R. § 1601.9. Palmer's intake questionnaire and attached

statement were not verified.  However, "[a] charge may be amended to cure technical defects or omissions, including failure to verify the charge . . . .  Such amendments . . . will relate back to the date the charge was first received." 29 C.F.R. § 1601.12(b); *see also Edelman v. Lynchburg College*, 535 U.S. 106, 118-19 (2002) (upholding EEOC's regulation allowing charges which are verified at later date to relate back to the original filing as a valid interpretation of statute).  Because Palmer signed and verified the charge she filed in April 2008, that verification relates back to Palmer's original filing in November 2007.  Thus, as the parties agreed at the oral argument, Palmer's failure to verify the intake questionnaire does not prevent it from constituting a valid charge if it was timely filed.

Accordingly, Palmer's November 5, 2007 submission satisfied the EEOC's information requirements, and the only question remaining is whether her submission constituted a charge, an issue that the parties agree is governed by the Supreme Court's decision in *Holowecki*.

**B.** **Timeliness**

1. *Holowecki* **decision**

In *Federal Express Corp. v. Holowecki*, ___ U.S. ___, 128 S. Ct. 1147 (2008), the Supreme Court considered an issue very similar to that posed by Southwest's motion to dismiss:  whether the completed EEOC intake questionnaire and affidavit submitted by the plaintiff constituted a valid "charge" for purposes of the timeliness of the lawsuit.  In that case, which involved an alleged violation of the Age Discrimination in Employment Act (ADEA), the Court found that the intake

questionnaire and attached six-page affidavit met the requirements of a charge. *Id.* at 1159-60.[3] The Court held that a filing with the EEOC constitutes a charge if it contains the information required by the agency's regulations and can be "reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." *Id.* at 1157-58. The plaintiff in *Holowecki* made an explicit request in the affidavit attached to her intake questionnaire, asking the agency to "please force Federal Express to end their age discrimination . . . ." *Id.* at 1159. (In the present case, the parties dispute whether Palmer's Intake Questionnaire and attached statement contained such a request.)

Significantly, the Court did not require an *explicit* request for action. Rather, the Court explained that the filing "must be examined from the standpoint of an objective observer to determine whether, by a reasonable construction of its terms, the filer requests the agency to activate its machinery and remedial processes . . . ." *Id.* at 1158. The Court observed that that the ADEA, like Title VII, "sets up a remedial scheme in which laypersons, rather than lawyers, are expected to initiate the process. The system must be accessible to individuals who have no detailed knowledge of the relevant statutory mechanisms and agency processes." *Id.* (quotations and citations omitted). Thus,

---

[3] Although the *Holowecki* case involved an alleged violation of the ADEA, and the Court cautioned that "employees and their counsel must be careful not to apply rules applicable under one statute to a different statute without careful and critical examination," 128 S. Ct. at 1153, numerous courts have applied *Holowecki* in the Title VII context because of the similarities between the statutory schemes of the ADEA and Title VII concerning exhaustion of administrative remedies. *See e.g. Evenson v. Sprint/United Mgt. Co.*, 2008 WL 4107524 at *6 (N.D. Tex. Aug. 21, 2008) (explaining that "[t]he exhaustion of administrative remedies requirement under the ADEA is nearly identical to that of Title VII"); *Beckham v. National R.R. Passenger Corp.*, 590 F. Supp. 2d 82, 86 (D.D.C. 2008); *Grice v. Baltimore County*, 2008 WL 4849322 at *4 n. 3 (D. Md. Nov. 5, 2008). The parties have not suggested any differences between Title VII and the ADEA that are relevant to the issues on the present motion, and this court joins the others that have applied the *Holowecki* analysis in a Title VII context.

9

"[d]ocuments filed by an employee with the EEOC should be construed, to the extent consistent with permissible rules of interpretation, to protect the employee's rights and statutory remedies." *Id.* at 1160. While noting that the standard is "permissive," in the sense that it might permit a wide range of documents to be classified as charges, the Court stated that such an approach is consistent with the practice of construing pro se litigants' pleadings liberally in the context of formal litigation. *Id.* at 1158.

The fact that the EEOC never acted on the Holowecki's questionnaire and her employer never received notice of it did not preclude the plaintiff's intake questionnaire and attached affidavit from being construed as a charge. *Id.* at 1158-59, 1160. The Court said that "[i]t would be illogical and impractical to make the definition of a charge dependent upon a condition subsequent over which the parties have no control." *Id.* at 1159.

### 2. Application of *Holowecki* to Palmer's submission

Although Palmer did not explicitly request that the EEOC take action to protect her rights, her answers on the intake questionnaire and the detailed statement she attached express her firm conviction that she was treated in a discriminatory manner and can reasonably be construed as requesting the EEOC to act. Palmer not only advised the EEOC that she had been "disciplined differently from other participants in th[e] incident," but also stated that Southwest's actions leading up to her termination were "discriminating" based on Southwest's "different appearance standards for men and women." (Am. Compl. Ex. B at ANK 29, 32.) Palmer identified three witnesses who could "verify [her] story." (*Id.* Ex. A at ANK 21.) She advised the EEOC that the transcripts from her arbitration hearing would provide "you" (*i.e.*, the EEOC) with additional information, presumably

to assist in its investigation. (*Id.* Ex. B at ANK 32.) That suggests Palmer wanted the EEOC "to activate its machinery," not that she "ha[d] questions about [her] rights and simply want[ed] information." *See* 128 S. Ct. at 1157-58. This construction is consistent with the Supreme Court's directive that a filing should be interpreted in a way which protects employee rights. *Holowecki*, 128 S. Ct. at 1160.

The printed language of the form should also be considered. That is the information and instruction given by the EEOC to the filer, who is often a non-lawyer. Although the filer's state of mind is not determinative (*Holowecki*, 128 S. Ct. at 1158), the reasonable construction of the filing from the standpoint of an objective observer necessarily includes the context in which the filer was writing.

The Court in *Holowecki* considered the form language of the intake questionnaire at issue there – which referred to the EEOC's having jurisdiction over "potential charges," and providing "pre-charge filing counseling" – and concluded that it did not suggest a request for agency action. *Id.* at 1159. The intake questionnaire Palmer filled out, however, is significantly different from the one considered in *Holowecki*.[4] Here, the printed language supports a conclusion that Palmer was requesting remedial action by the EEOC. For example, Palmer's intake questionnaire states that its purpose is "to solicit information . . . *to enable the Commission to act* on matters within its jurisdiction," and that the failure to provide the information requested "may hamper the Commission's investigation of a charge," suggesting that a completed questionnaire will enable the EEOC "to act" without more. (Am. Compl. Ex. A at ANK 21, emphasis added.) The form language

---

[4] The intake questionnaire form considered in *Holowecki* dated from 1987. *See* 128 S. Ct. at 1165 n. 4 (Thomas, J., dissenting). The form Palmer filled out indicates a date of October 2006. (Am. Compl. Ex. A at ANK 21.)

on Palmer's questionnaire also states that the information included on the form would be used to assist the EEOC in determining whether it has jurisdiction over "allegations of employment discrimination" and in providing "charge filing counseling." (*Id.*) At least two courts have construed that language as requesting agency action. *See Beckham*, 590 F. Supp. 2d at 87; *Joseph v. Pennsylvania*, 2009 WL 1012464 at *2 (E.D. Pa. April 15, 2009).

Perhaps most significantly, the form language in Palmer's questionnaire also states, "When this form constitutes the only timely written statement of allegations of employment discrimination, the Commission will, consistent with 29 CFR 1601.12(b) and 29 CFR 1626.8(b), consider it to be a sufficient charge of discrimination under the relevant statute(s)." (Am. Compl. Ex. A at ANK 21.) That language has been found to support the conclusion that completing the questionnaire constituted a request by the filer to activate the EEOC's remedial processes. *See e.g. Taylor v. Oce Imagistics, Inc.*, 2008 WL 2148557 at *3 (E.D. Va. May 21, 2008) (concluding the questionnaire constituted a charge where it contained the same form language); *Beckham*, 590 F. Supp. 2d at 86-87 (same); *Cargo v. Kansas City So.*, 2009 WL 1808458 at *2 (W.D. La. June 22, 2009) (same).[5]

Because Palmer's November 2007 submission was the only timely written statement of allegations of employment discrimination, the EEOC's form language says that the EEOC would consider it a valid charge. In fact, the EEOC issued a Notice of Charge addressed to Southwest less than two months after Palmer submitted her questionnaire with the attached statement and before

---

[5] At the argument, Southwest argued that none of the form language in Palmer's Questionnaire should be taken into account, because otherwise every questionnaire with the same form language might automatically be considered a charge. Under *Holowecki,* the form language cannot be ignored. But the final determination must be based on Palmer's submission, taken as a whole, which includes Palmer's words along with the form language.

Palmer filed anything else. The EEOC's decision to issue or not to issue a Notice of Charge based on a particular filing cannot be determinative. *Holowecki,* 128 S. Ct. at 1158-59, 1160 (noting that "it would be illogical and impractical to make the definition of charge dependent upon a condition subsequent over which the parties have no control"). But it is not correct, as Southwest argues, that the EEOC's action has no bearing on whether Palmer's submission qualifies as a charge. The EEOC's interpretation of Palmer's submission as a valid charge is entitled to some deference (128 S. Ct. at 1156), and it certainly supports the conclusion that Palmer's November 2007 submission can *reasonably* be interpreted as a request for the agency to activate its machinery and remedial processes.

Southwest argues that Palmer's statement in her attachment that she had sought help from the Transport Workers Union and was awaiting a decision from an arbitrator negates any inference that Palmer was requesting agency action. However, Palmer provided that information in response to a specific question on the questionnaire as to whether she had sought help from a union or other source. (Am. Compl. Ex. A at ANK 21.) Moreover, nothing in her submission indicated that she was *not* requesting the EEOC's assistance because of the arbitration proceeding. On the contrary, Palmer advised the EEOC that the transcripts from the arbitration hearing would provide the EEOC with more information about the incident. (*Id.* Ex. B at ANK 32.) That statement reinforces the conclusion that Palmer was asking the EEOC to act, and not merely requesting information about her rights.

Finally, Southwest relies on a number of cases in which courts have found that the questionnaires submitted by the plaintiffs did not constitute valid charges, but those cases are distinguishable. In *Marshall v. Honeywell Tech. Solutions, Inc.*, 598 F. Supp. 2d 57, 61 (D.D.C. 2009), the plaintiff not only failed to identify her employer properly and check the correct box to

indicate age discrimination, but also failed to include a detailed description of the discrimination, as Palmer did in her four-page attached statement. Similarly, in *Grice*, 2008 WL 4849322 at *4, the plaintiff did not supplement her intake questionnaire with any detailed statement from which the court could infer a request for the EEOC to act. Moreover, the form language of the questionnaire in *Grice* was similar to that in *Holowecki*, referring to "pre-charge filing counseling" and EEOC jurisdiction over "potential charges" (as opposed to "charge filing counseling" and jurisdiction over "allegations of employment discrimination" as stated in Palmer's questionnaire). *Id*.

*Evenson*, 2008 WL 4107524 at *4, the third case cited by Southwest, involved a very different issue: whether the plaintiff could rely on an allegation of sex discrimination in the intake questionnaire which was not included in her later, timely filed formal charge. Like Palmer's questionnaire, the questionnaire submitted by the plaintiff stated, "When this form constitutes the only timely written statement of allegations of employment discrimination, the [EEOC] will . . . consider it to be a sufficient charge of discrimination." *Id.* at *8. From that language, the court concluded that when a timely formal charge of discrimination *is* later filed, the questionnaire should not be deemed a valid charge of discrimination. *Id.* Because the plaintiff in that case subsequently filed a timely charge, the allegation of sex discrimination contained in her questionnaire could not be relied upon. *Id.* In this case, the intake questionnaire and attached statement were Palmer's only timely submission.[6]

---

[6] In contrast to the cases cited by Southwest are a substantial number of cases in which documents submitted to the EEOC have been construed as a request for agency action and therefore deemed charges under *Holowecki*. *See e.g. Cardwell v. Stryden, Inc.*, 2009 WL 383754 at *3 (E.D. Pa. Feb. 12, 2009) (holding that intake questionnaire constituted charge and denying motion to dismiss); *Simmons v. Harman Mgt. Corp.*, 2008 WL 4862450 at *3 (D. Utah Nov. 7, 2008) (holding that plaintiff's submission which included two page attachment to questionnaire detailing alleged violation and potential witnesses constituted request for remedial action); *Fava-

In summary, the intake questionnaire and attached statement Palmer filed with the EEOC on November 5, 2007 constitutes a valid charge, and because it was filed within 300 days of Southwest's allegedly discriminatory conduct, it was timely. Southwest's motion to dismiss is therefore denied.[7]

**CONCLUSION**

For the reasons set forth above, Southwest's motion to dismiss is denied. A status hearing is set for November 2, 2009 at 9:45 a.m.

IT IS SO ORDERED.

_____
GERALDINE SOAT BROWN
United States Magistrate Judge

DATED: October 23, 2009

---

*Crockett v. Boehringer Ingelheim Pharm., Inc.*, 2008 WL 1925099 at \*\*1, 3 (W.D. Pa. April 29, 2008) (finding that intake questionnaire and six-paragraph letter satisfied minimum requirements for a charge).

[7] Palmer also argues that if her claim of discrimination based on her termination is found to be untimely, her failure to be reinstated is a separate, timely claim, because her April 2008 charge was filed within 300 days of October 2, 2007, the date Gibson was reinstated but Palmer was not. That argument appears to be at odds with *Lever v. Northwestern Univ.*, 979 F.2d 552, 556 (7th Cir. 1992) ("[A]n employer's refusal to undo a discriminatory decision is not a fresh act of discrimination. . . . [A]dverse decisions on appeals do not re-start the time for filing a charge."). However, because the court concludes that Palmer's claim of discrimination based on her termination is timely, it is not necessary to reach Palmer's second argument.